# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DON CRUDUP | * | |
| Plaintiff | * | |
| v | * | Civil Action No. JKB-16-3592 |
| | | (Consolidated Case: JKB-16-3593) |
| DARRYL WEBSTER | * | |
| DEBORAH TABULOV[1] | | |
| | * | |
| Defendants | | |

\*\*\*

## MEMORANDUM

In response to these consolidated cases, defendants filed motions to dismiss or for summary judgment. ECF 24 and 27. Shortly after defendants filed their dispositive motions, counsel entered his appearance on behalf of plaintiff and moved for an extension of time to and including July 26, 2017, in which to file an opposition response. ECF 30. Although the motion was granted, the dispositive motions remain unopposed. ECF 31. No hearing is required to address the matters pending. *See* Local Rule 105.6 (D. Md. 2016). For the reasons that follow, the unopposed motions[2] shall be granted.

### Background

Plaintiff Don Crudup, an inmate committed to the custody of the Department of Public Safety and Correctional Services and confined at Eastern Correctional Institution (ECI), asserts that on September 1, 2016, his prescribed cane was taken from him by the facility administrator

---

[1] The Clerk shall amend the docket to reflect the full and correct spelling of defendants' names.

[2] Defendants' dispositive submissions will be treated as motions for summary judgment under Federal Rule of Civil Procedure 56 because materials outside the original pleadings have been considered. *See Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

for ECI-Annex, Darryl Webster. ECF 1 at p. 3. As a result, Crudup claims he injured his right leg. *Id*.

Crudup provides what he asserts is a verbatim copy[3] of an incident report written by Officer Tyndall documenting the circumstances under which his cane was confiscated. ECF 1 at pp. 5-6. Tyndall was assigned to escort Crudup and informed Crudup that he was going to confiscate the homemade shorts he was wearing and told him he had to wear state-issued jeans. *Id*. at p. 5. Crudup refused to wear the jeans despite being ordered to do so three times. *Id*. During this encounter, Tyndall relates that Webster came onto the housing unit and began to inquire about Crudup's cane. *Id*. at p. 6. Crudup produced paperwork indicating he had been prescribed the cane by medical staff, but Webster was told by medical staff that Crudup did not have a medical order for a cane. *Id*. Consequently, Webster confiscated the cane. *Id*.

Crudup further avers that an additional report written by Officer C. Fontaine indicates that he was given a direct order by Webster to retrieve a cane from Crudup. ECF 1 at p. 7. Fontaine stated that Crudup refused several orders to relinquish the cane and that force was "almost used by FA Webster and [Fontaine]" to recover the cane. *Id*. Fontaine then allegedly wrote that Crudup told Webster, "you can stick that cane up your ass." *Id*.

Crudup states that Fontaine's report does not mention a struggle "back and forwards" between himself and Webster "while [Crudup] was handcuffed from behind threw (sic) this incident." ECF 1 at p. 8. Crudup also maintains there is a discrepancy among the reports regarding who gave him a direct order to relinquish the cane and that Fontaine left out information about Webster attacking him and pulling the cane away. *Id*.

---

[3] Crudup does not provide a copy of the original reports by Tyndall and Fontaine, but a "copy" in Crudup's handwriting. ECF 1 at pp. 5-6 (Tyndall report) and pp. 7-8 (Fontaine Report). The original document for Tyndall's report was provided by Crudup in ECF 6-1 at p. 1 (Notice of Infraction dated September 1, 2016).

2

In his supplemental complaint,[4] Crudup claims that after Webster took his cane he made a request for a replacement cane to the medical provider, Wexford Health Sources, Inc., and it took 41 days to receive another cane. ECF 4 at p. 3. Crudup states that when he requested the cane, "the provider stated that the facility administrator Mr. Webster stated for me not to have this." *Id*. Crudup claims that the response "puts them in error of negligence for not providing medical equipment." *Id*. He names only Deborah Tabulov as the defendant for this claim. *Id*. at p. 1.

Crudup further alleges in a second supplement that Tyndall's Notice of Infraction and his testimony during the disciplinary adjustment hearing differed regarding whether he saw paperwork stating that Crudup had a medical condition requiring his use of a cane. ECF 6 at pp. 1–2. Crudup states that "[i]t's clear to see that untruthfulness occurred during [Tyndall's] report to cover up what he saw during the incident." *Id*. Tyndall's Notice of Infraction indicates that "Crudup produced the paperwork" that Webster requested to establish that Crudup had a medical order of a cane, but that "Webster stated that medical did not have." ECF 6-1 at p. 1. During the hearing, Tyndall's testimony is recounted as indicating that "[t]he paperwork [Crudup] had did not match up with what was in medical" and that "[w]e went through his paperwork we found it was from another institution." *Id*. at p. 3. Tyndall indicated that he never saw paperwork from ECI-Annex stating that Crudup was disabled and that he needed a cane. *Id*.

Crudup indicated during his disciplinary hearing that the entire incident concerned him shadow boxing and using a medicine ball and was not about his shorts or his possession of a cane. ECF 6-1 at p. 3. He claimed he was showing Webster that "boxing and use of a medicine ball was not martial arts" and that Webster "got mad and said, 'you are out of here' do what my

---

[4] The first supplemental complaint was filed as a separate civil action and later consolidated with this case. *See* ECF 4; Civil Action JKB-16-3593.

officers tell you to do follow [*sic*] the rules." *Id*. Crudup further maintained that the reporting officer did not report the full details of the incident and denied telling Webster to shove or stick the cane "up your ass." *Id*.

An administrative remedy procedure complaint ("ARP") filed by Crudup on September 15, 2016, was found meritorious in part by Warden John Wolfe. ECF 7-1 at pp. 1- 3. Crudup complained that he suffers from chronic pain syndrome and had requested on several occasions either a cane or a walker or both. ECF 7-1 at p. 1. He further states that due to issues with his spine, he walks slowly, stooped over at his waist; claims a cane was ordered for him on June 16, 2012; and the lack of response to his sick call slips poses a threat to his safety as it may cause him an injury. *Id*. at p. 2.

In his response, Wolfe stated:

> There was no active order for a cane, as medical providers must reassess and order annually, you did not have an active order. There was though a delay in care as you waited for your chronic care visit instead of being seen for provider sick call. On 9/1/2016 you were evaluated by the doctor. You apparently took a fall and were assessed by the physician. You complained of pain to knee and back and were admitted to the infirmary. According to that documentation, you were seen by custody exercising and no use of cane. The cane was confiscated as there was no order for the cane. The doctor also documented on 9/1/2016 that there was only mention of a cane in a 2014 document but no current order. On 9/2/2016, it was noted that you had been standing at the infirmary door waiting of food and medication independently without the use of a cane. When asked about standing unassisted by the physician, you were unable to explain. It is also documented by the physician on 9/2/2016 that the doctor offered treatment options for your knee, but you declined. The doctor noted in the infirmary that there was minimal swelling to your knee and that you no longer needed infirmary level care and was discharged back to the housing unit with no order for a cane noted. On 9/6/2016 you submitted a sick call slip in reference to a cane and seen by the nurse on 9/8/2016, the nurse noted that an email was sent to the providers about your request and mobility issues. On 9/13/2016 you submitted another sick call in reference to cane and it was noted on 9/15/2016 by the nurse that you would not comply with custody and get properly dressed to come out for your sick call visit. You were notified at the door that you would be seen for chronic care. On 9/18/2016 medical received a sick call slip from you again requesting a cane, you were

> advised at the door to address this concern at upcoming chronic care visit according to the medical documentation on 9/19/2016. On 9/29/2016, a slip call [*sic*] was received in reference to a cane. According to nurse note 9/30/2016, you walked up to the medical room in segregation independently with a limp, you were again deferred to chronic care. On 10/6/2016 you were seen in chronic care to address his [*sic*] chronic pain. At the time of this visit, you complained of pain and your pain medications were changed and x-rays were ordered for your knee. The provider also placed an order the next day for you to have bottom bunk and bottom tier as you complained of limited mobility. On 10/9/2016, medical received another request from you about needing a cane and seen by nurse on 10/11/2016 at which time she documented that she emailed your chronic care provider about such request. On 10/14/2016 an order for a cane was placed by the chronic care provider due to your recent x-ray showed degenerative joint disease to assist in your ambulation. A cane was received and signed for the cane on 10/14/2016, the day in which it was ordered.

ECF 7-1 at p. 3.

In a second ARP dated October 10, 2016, Crudup alleges that he has been without a cane since September 1, 2016, despite his medical history containing an alert that he uses a cane for a disability involving his right hip, right leg, and a back disorder involving discs at levels L4 to L5. ECF 7-1 at p. 4. Crudup states that the provider who refused to issue a cane is defendant Deborah Tabulov. *Id*. This ARP was also found meritorious in part by Warden Wolfe. *Id*. The Warden's response duplicates the response to Crudup's September 15, 2016, ARP with the addition of the following observation:

> In reference to your request for medical housing or infirmary stay, you have been evaluated for the need to be placed on a medical tier by the chronic care provider and the request is being processed and awaiting approvals from necessary parties.

ECF 7-1 at p. 7.

## Standard of Review

Summary judgment is governed by Federal Rule of Civil Procedure 56(a), which provides in part:

5

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting former Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 323–24 (1986)).

## Discussion

Although Crudup's precise claim is not entirely clear, liberally construed, the complaint appears to allege that depriving Crudup of a cane was a violation of his Eighth Amendment right

6

to be free from cruel and unusual punishment. His use of the term "negligence" to describe defendants' conduct does not foreclose analysis of the claims asserted as alleging constitutional deprivations. Inartful pleading by self-represented litigants is not a proper basis for dismissal of the claims asserted.

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences." *Grayson v. Peed*, 195 F.3d 692, 695- 96 (4th Cir. 1999).

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). A medical condition is serious when it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity

7

for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008), *see also Scinto v. Stansberry*, 841 F.3d 219, 228 (4th Cir. 2016) (failure to provide diabetic inmate with insulin where physician acknowledged it was required is evidence of objectively serious medical need). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *See Farmer*, 511 U.S. at 844.

Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2000) (citing *Liebe v. Norton*, 157 F.3d 574, 577 (8th Cir. 1998)) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken); *see also Jackson v. Lightsley*, 775 F.3d 170, 179 (4th Cir. 2014) (physician's act of prescribing treatment raises fair inference that he believed treatment was necessary and that failure to provide it would pose an excessive risk). While "a prisoner does not enjoy a constitutional right to the treatment of his or her choice, the treatment a prison facility does provide must nevertheless be adequate to address the prisoner's serious medical need." *De'lonta v. Johnson*, 708 F.3d 520, 526 (4th Cir. 2013) (refusal to

evaluate transgender inmate for gender reassignment surgery where current therapy failed to alleviate urge for serious self-harm).

Defendant Darryl Webster provides a declaration in support of his dispositive motion indicating that as Facility Administrator of ECI Annex, he received complaints from correctional officers regarding Crudup in the summer of 2016. ECF 27-3 at p. 1. Officers complained that Crudup "was frequently difficult and violating minor rules." *Id*. Webster states that there were no major problems, but "the attention raised the question of why . . . Crudup had a cane, in part because he was very active and did not seem dependent on the use of a cane." *Id*. at p. 2. Webster investigated the matter and could not find a doctor's order prescribing Crudup the use of a cane. *Id*. The only indication regarding permission for use of a cane by Crudup was that "he had obtained permission to use a cane temporarily for a visit to court, but had not returned the cane." *Id*.

Webster states that the "matter came to a head on September 1, 2016," when he encountered Crudup in the property room and asked for the cane. *Id*. Crudup initially refused, but after Webster told him he would get the cane back if he could produce paperwork authorizing him to have it, Crudup gave Webster the cane. *Id*. The cane was then confiscated because Crudup could not demonstrate that the cane had been authorized. *Id*. In addition to the concerns raised by correctional staff, Webster relates that medical staff also noted that Crudup acted as though he did not need a cane during medical appointments. *Id*. at p. 3. After Crudup filed several complaints regarding the removal of the cane, medical staff approved his use of a cane on October 14, 2016, and the cane was returned to him. *Id*., *see also* ECF 27-2 at p. 6.

Webster has presented evidence, which Crudup does not dispute, that establishes that Crudup did not suffer the sort of serious medical need that was so obvious a lay person like

Webster must have known he required a cane. Crudup himself admitted he was shadow-boxing, which prompted the questions into why he had or needed a cane. *See* ECF 6-1 at p. 2 (Adjustment hearing record). In addition, Webster provides undisputed evidence that there was no valid medical order requiring Crudup's use of a cane at the time it was confiscated. ECF 27-3 at pp. 2 & 4, *see also* ECF 27-2 at p.75. The later determination that Crudup could benefit from the use of a cane has no bearing on Webster's subjective knowledge at the time he confiscated the cane.

With respect to defendant Tabulov, the only allegation against her is that she would not provide Crudup with a cane after the unauthorized cane was confiscated. Crudup does not allege that Tabulov was aware of a serious medical need that required issuance of a cane or that her failure to issue a cane inflicted unnecessary pain or caused his condition to worsen. Indeed, Crudup provides no details regarding Tabulov's alleged wrong-doing and does not dispute her assertion that she was not involved in his care or treatment until 35 days after his cane was confiscated. ECF 24-4 at p. 18 – 20 (Oct. 6, 2016 Chronic Care Visit record). Tabulov then ordered a cane for Crudup's use days after she examined him and noted that a recent knee x-ray showed degenerative joint disease and an MRI of his spine demonstrated bulging discs and spinal stenosis. *Id*. at p. 26 (October 14, 2016 Chart update).

Tabulov states that Crudup's own exhibits establish that he was seen by custody staff exercising without using his cane; he was seen standing at the infirmary door waiting for food and medication without use of a cane; and he was offered treatment options for his knee that he declined. *See* ECF 7-1; *see also* ECF 24-4 at p. 3. Crudup's medical limitation restricted him to "moderate activity" defined as refraining from "heavy lifting (50 pounds)" and from "prolonged physical exertion" and permitting job assignments such as "housekeeping, kitchen, laundry, etc."

ECF 24-3 at p. 1. Tabulov further states that medical records indicate that Crudup had admitted on July 23, 2016, that he had "been using a cane for three months but state[d] that he can do without it if he needs to." *Id.* To the extent Crudup claims there was an undue delay in providing him with another cane after the one he had was confiscated, Tabulov presents evidence, which is undisputed by Crudup, indicating the only delay involved was simply the time needed to perform medical evaluations to determine if a cane was indicated for Crudup's condition and during the interim, Crudup received other forms of pain treatment.

It is clear that Webster and Tabulov are entitled to summary judgment in their favor. It is also clear that had Crudup named different correctional or medical officials in his complaint, they too would be entitled to judgment in their favor. The confiscation of Crudup's cane and the delay in providing him with another one does not, under the circumstances of this case, state a constitutional claim. To the extent that Crudup is alleging a negligence claim based on state law, this court declines to accept supplemental jurisdiction over that claim. *See Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (citing 28 U.S.C. § 1367(c)) ("A federal court may decline to exercise supplemental jurisdiction over state law claims where it has dismissed the federal claim.")

A separate order follows.

September 25, 2017                   /s/
Date                   James K. Bredar
                 United States District Judge